# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

REGINALD BROWN and NICHOLAS BILES,

    Plaintiffs,

v.                                            Case No. 05-02419

CITY OF MEMPHIS and ARTHUR SEASE IV,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

While on their way to purchase crack cocaine, Plaintiffs Reginald Brown and Nicholas Biles were robbed and falsely imprisoned by Defendant Arthur Sease IV, who at the time was an off-duty Memphis police officer. Plaintiffs allege civil rights violations and tort law claims against Defendants Sease and the City of Memphis. The City of Memphis moves for summary judgment on all counts. The motion has been fully briefed, and a hearing is unnecessary. For the following reasons, the court will grant summary judgment in favor of the City of Memphis.

### I. BACKGROUND

The facts of this case are largely undisputed. On April 10, 2004, between 1:00 p.m. and 1:30 p.m., Plaintiffs Reginald Brown and Nicholas Biles were driving in Memphis, Tennessee to purchase crack cocaine from Nicholas Crawford. Before they arrived, Memphis police officer Arthur Sease IV pulled over Brown, who was driving the vehicle, for a traffic violation within the City of Memphis Police Department's (the "Department's") North Precinct. Sease was wearing his Memphis police officer uniform

and driving a Department patrol car when he stopped Plaintiffs. Sease placed Brown and Biles in the back of his patrol car and took $400 from Brown's pocket and $800 from Bile's pocket. Sease then searched the vehicle and confiscated a lockbox, which Plaintiffs allege contained over $30,000, though the parties dispute the exact amount. When Plaintiffs asked Sease about the money, he placed his hand on his gun and told them to leave.

Sease, a Memphis police officer, was assigned to the Department's South Precinct and worked the 4:00 p.m. to 12:00 a.m. shift. The Department's policy requires its officers to return their patrol car keys and other daily-issued equipment to the equipment officer at the conclusion of each shift, but Sease had not returned his patrol car keys when his previous shift ended at 12:00 a.m. on April 10, 2004. Sease had used his South Precinct patrol car, while off-duty and without the knowledge or permission of his commanding officer, to detain Plaintiffs in the North Precinct. After robbing Plaintiffs, Sease returned his patrol car keys when he reported for duty at 3:00 p.m. later the same day.

Plaintiffs reported the robbery to the Department. An investigation revealed that Sease had conspired with Crawford to rob Plaintiffs on their way to purchase drugs. Sease was indicted on two counts of robbery and two counts of official oppression and eventually incarcerated.

Plaintiffs filed suit against Defendants Sease and the City of Memphis (the "City") alleging: (1) violations of the Fourth and Fourteenth Amendments brought under 42 U.S.C. § 1983; (2) negligence and gross negligence; and (3) negligence per se. The

court dismissed Plaintiffs' negligence per se claims under Rule 12(b)(6). The City moves for summary judgment on the remaining counts.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court does not weigh the evidence

to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

## III. DISCUSSION

### A. Violations of Fourth and Fourteenth Amendments under 42 U.S.C. § 1983

Municipalities are not subject to liability for the deprivation of civil rights under the doctrine of *respondeat superior*.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Municipalities may be liable under § 1983 for deprivations of civil rights when the deprivation resulted from the "execution of a policy or custom" of the municipality.  *Id.* at 694.  "[A] plaintiff bringing a § 1983 claim against a municipality must therefore identify the policy or custom that caused her injury."  *Ford v. Cnty. of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008).  "A 'custom' for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.'"  *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.") (citations omitted).

Once a custom is identified, the plaintiff must "show that the municipal action was taken with the requisite degree of culpability."  *Bd. of Cnty. Comm'rs*, 520 U.S. at 404.  "The plaintiff must . . . demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Id.*  The municipality must have "intentionally" deprived the plaintiff of a federally protected right.  *Id.* at 405.  Finally, the

4

"plaintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred *because* of the execution of that policy." *Claiborne Cnty.*, 103 F.3d at 508 (citation omitted).

Plaintiffs identify one possible "custom" for which the City can be held liable. Under the Department's procedures, police officers are responsible for returning their patrol car keys to the equipment officer at the conclusion of their shifts. (Brenda Patterson Aff. ¶ 24, Dkt. # 82-8; Sherice Martin Test. at 6-7, Dkt. # 82-11.) However, Officer Sherice Martin testified at Sease's criminal trial that officers would "sometimes" forget to return their keys inadvertently. (Sherice Martin Test. at 7, Dkt. # 82-11.) When this situation arose, the officers would normally call the precinct and inform the equipment officer that they still had the keys, and if the keys were needed for the next shift, the officer would immediately return them to the precinct. (*Id.*) If not, the equipment officer would simply make a note that the keys were taken home by mistake, and the officer would return them at a later time. (*Id.*) Plaintiffs argue that the City had a custom of not stringently requiring its officers to return their patrol car keys after every shift, and this custom resulted in the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights.

Even fully accepting the picture painted by Martin's testimony, it provides a questionable basis upon which to conclude that Plaintiffs have identified a "custom" capable of inflicting harm on others for purposes of *Monell* liability. The court will, nonetheless, simply assume that it is sufficient to survive summary judgment at this step. Beyond that, however, Plaintiffs have offered no evidence that suggests the City deliberately allowed this custom to continue in order to deprive Plaintiffs of their civil

5

rights. Nor have Plaintiffs demonstrated how such a "custom" *directly* resulted in Sease robbing and falsely imprisoning Plaintiffs. It is equally, if not more plausible—and illustrative of Plaintiffs' failure to show a causal connection—to argue that by itself, the City's policy of maintaining a police force, equipped as it was with patrol cars, uniforms, and firearms, resulted in a deprivation of Plaintiffs' civil rights.

Plaintiffs' complaint alleges that the City is liable for failing to properly train and supervise its police officers and for inadequately investigating officer misconduct. A municipality is liable for failing to train or supervise when the plaintiff proves: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex. rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs*, 520 U.S. at 410.

The City produced evidence explaining the training instruction that all Memphis police officers are required to complete before being certified as commissioned law enforcement officers. (Gregory Sanders Aff., Dkt. # 82-9.) Sease completed the mandatory training courses, receiving 840 hours of instruction before being certified. (*Id.* at 5.) The Department trains its officers in departmental policy and procedures. (*Id.* at 6.) The Department has rules regulating, among other things, personal conduct, personal use of equipment and property, unauthorized operation of department vehicles, and how to properly conduct a traffic arrest and search. (*Id.* at 7.)

Plaintiffs argue that the City failed "to adequately train or supervise its employees to make sure that all equipment was returned at the end of shifts." (Pls.' Resp. at 8, Dkt. # 87-1). To support this claim, Plaintiffs rely solely on Martin's testimony, in which she discussed how officers were not always required to immediately return their patrol car keys when they forgot to turn them in at the end of a shift. (Sherice Martin Test. at 7, Dkt. # 82-11.) Assuming that Martin's testimony creates a genuine dispute of fact regarding whether the City's training or supervision was inadequate, Plaintiffs have provided no evidence that shows the inadequacy resulted from the City's deliberate indifference. The Sixth Circuit "has identified two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise." *Ellis ex. rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). The first is the "'failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction.'" *Id.* at 700-01 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)). The second "'is where the city fails to act in response to repeated complaints of constitutional violations by its officers.'" *Pendergrass*, 455 F.3d at 701 (quoting *Brown*, 172 F.3d at 931). Plaintiffs offer no evidence to prove that either situation is present in this case. Furthermore, Plaintiffs have not shown how the City's allegedly inadequate training and supervision "actually caused" or was "closely related to" Plaintiffs' injuries.

Plaintiffs allege that the City created a "policy of indifference" towards Memphis citizens by conducting "slow, delayed, or non-existent investigations" of police misconduct. (Pls.' Compl. ¶ 36, Dkt. # 33.) Plaintiffs argue that the City failed to thoroughly investigate complaints of misconduct alleged against Sease and other

7

officers. (*Id.*) As an initial matter, the court notes that Plaintiffs' allegation is more appropriately labeled a "custom" instead of a "policy," as *Monell* liability defines a "policy" as "an officially executed policy." *See Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

Only one other individual besides Brown and Biles filed a complaint of misconduct against Sease. (Brenda Patterson Aff. ¶ 33, Dkt. # 82-8.) On January 15, 2004, Lesley Covington filed a complaint alleging that Sease detained him and stole his money. (*Id.* ¶ 11.) The Department investigated the complaint pursuant to its policies and procedures. (*Id.* ¶¶ 12-17.) The Department unsuccessfully attempted to speak with Covington by visiting his residence, leaving messages, and mailing him a contact letter. (*Id.* ¶ 16.) However, Covington never respond to the Department's requests. (Id.) The investigation found that Sease violated Department policy. (*Id.* ¶ 19.) The Department referred the case for prosecution, but it was found to have insufficient evidence to justify criminal charges against Sease. (*Id.* ¶ 21.)

Plaintiffs argue that Covington was "uncomfortable" speaking with police officers, (Pls.' Resp. ¶ 49, Dkt. # 87-1), and that his complaint was not fully investigated after the officers were unable to speak with him, (*Id.* ¶ 67). But Plaintiffs offer no evidence that shows how the investigation was incomplete. Nor do Plaintiffs even allege that the Department inadequately investigated Brown's and Biles's complaints against Sease, or any other complaints alleged against Memphis police officers. Plaintiffs have not created a genuine dispute of fact regarding whether the City failed to properly investigate complaints of officer misconduct.

8

Finally, Plaintiffs' complaint claims that the City had a "policy of inactivity and ineffectiveness." (Pls.' Compl. ¶ 38, Dkt. # 33.) Plaintiffs never attempt to explain this "policy," much less offer evidence to support its existence.

Accordingly, the court will grant summary judgment in favor of the City on Plaintiffs' § 1983 claims alleging violations of the Fourth and Fourteenth Amendments.

### B. Negligence and Gross Negligence

Plaintiffs assert negligence and gross negligence against the City. The Tennessee Governmental Tort Liability Act, Tenn. Code. Ann. § 29-20-101 *et seq.*, governs Plaintiffs' state tort claims against the City. *Milligan v. United States*, 644 F. Supp. 2d 1020, 1047 (M.D. Tenn. 2009). Governmental entities are immune from lawsuits that arise from the exercise of their governmental or proprietary functions, subject to exceptions. § 29-20-201(a). Under one such exception, governmental entities are not immune from suits "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." § 29-20-205. However, governmental entities remain immune if the injury falls under one of the specified intentional torts listed in § 29-20-205(2). Sease robbed and falsely imprisoned Plaintiffs, neither of which are included as one of the exempted intentional torts. *See* § 29-20-205(2). When a plaintiff seeks to hold a governmental entity liable for an intentional tort that is not specified in § 29-20-205(2), "a governmental entity may only be held liable where the plaintiff makes a direct showing of negligence on the part of the governmental entity with respect to the employee's intentionally tortious conduct." *Milligan*, 644 F. Supp. 2d at 1047 (citations and internal quotations omitted).

9

Plaintiffs argue that the City acted negligently by not requiring Sease to return his patrol car keys at the end of his shift that preceded their injuries. However, Plaintiffs have not offered any evidence, beyond conclusory assertions, that show how it was foreseeable that Sease would rob and falsely imprison Plaintiffs because he retained his keys after the conclusion of his shift. Indeed, the fact that other Memphis police officers occasionally forgot to return their keys without subsequently engaging in similar criminal conduct suggests that Plaintiffs' injuries were not foreseeable. *Cf. Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001) (finding that a nursing home's negligence "proximately caused" a patient's injury under § 29-20-205 because a nursing assistant's assault of the patient "was a foreseeable consequence of [the nursing home's] failure to take reasonable precautions to protect its residents from the risk of abuse by this aggressive nursing assistant"). As Plaintiffs have not identified a genuine dispute of fact regarding how the City's alleged negligence proximately caused Plaintiffs' injuries, the court will grant the City summary judgment on Plaintiffs' claims for negligence and gross negligence.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 82] is GRANTED.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 5, 2013, by electronic and/or ordinary mail.

                                              s/Lisa Wagner
                                              Case Manager and Deputy Clerk
                                              (313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\05-02419.BROWN.Grant.Summ.Judg.wpd

11